Edward R. Hugo [Bar No. 124839]
Gregory S. Rosse [Bar No. 157965]
Thomas J. Moses [Bar No. 197245]
tmoses@bhplaw.com
BRYDON HUGO & PARKER
135 Main Street, 20th Floor
San Francisco, CA 94105
Telephone: (415) 808-0300
Facsimile: (415) 808-0333

Attorneys for Defendant
FOSTER WHEELER ENERGY CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY C. BALL, individually and as Special Administrator of the Estate of ALFRED C. BALL; and REGINALD K. BALL, an individual;<br><br>Plaintiff(s),<br><br>vs.<br><br>UNION CARBIDE CORPORATION, a corporation; FOSTER WHEELER ENERGY CORPORATION, formerly known as FOSTER WHEELER CORPORATION, a corporation; GARLOCK, INC., a corporation; OWENS ILLINOIS, INC., a corporation; RAPID AMERICAN CORPORATION, a corporation; and DOES 1 through 150, inclusive,<br><br>Defendants. | (ASBESTOS)<br><br>USDC Case No. 07-CV-2392-W-POR<br><br>San Diego Superior Court Case No. 37-2007-00081444-CU-PO-CTL<br><br>DEFENDANT FOSTER WHEELER ENERGY CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND (**ONE OF FIFTEEN**)<br><br>Date: February 19, 2008<br>Time: 10:30 a.m.<br>Dept. D-7<br>Judge: Hon. Thomas J. Whelan |

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .......... 1

II. STATEMENT OF RELEVANT FACTS .......... 1

III. ARGUMENT .......... 4

A. IN ORDER TO PROTECT THE UNIQUE FEDERAL ISSUE AT STAKE IN THESE CASES, PLAINTIFFS' REMAND APPLICATION MUST BE DENIED .......... 4

B. FOSTER WHEELER MEETS THE REQUIREMENTS OF §1442(A)(1) AND JURISDICTION IS PROPER IN THIS COURT .......... 6

1. *Foster Wheeler has Established that it "Acted Under" the Color of Federal Authority* .......... 7

2. *Foster Wheeler Has Asserted a Colorable Federal Defense* .......... 9

3. *Foster Wheeler Has Demonstrated a Causal Nexus Between the Federal Direction and the Conduct At Issue* .......... 13

IV. CONCLUSION .......... 15



BRYDON
LAW GROUP
425 CALIFORNIA STREET
SUITE 1400
San Francisco, CA 94104

# TABLE OF AUTHORITIES

## Cases

*Akin v. Ashland Chemical Co,*
(10th Cir. 1998) 156 F.3d 1030 ............ 7

*Akin v. Big Three Indus., Inc.,*
(E.D. Tex. 1994) 851 F. Supp. 819 ............ 7

*Arizona v. Manypenny,*
(1981) 451 U.S. 232 ............ 4

*Boyle v. United Technologies Corp.,*
487 U.S. 500 (1988) ............ 5, 9, 10, 11, 13, 14, 15,

*Chicano v. General Electric Co.,*
No. 03-5126 (E.D.Pa., filed Apr. 6, 2004) ............ 8

*Colorado v. Syms,*
286 U.S. 510 (1983) ............ 14

*Crocker v. Borden, Inc.,*
(E.D. La. 1994) 852 F. Supp. 1322 ............ 8

*Delancey v. General Electric,*
No. 04-431 (E.D.La., filed Mar. 31, 2004) ............ 8

*Feidt v. Owens Corning Fiberglas Corp.,*
(3rd Cir. 1998) 53 F.3d 124) ............ 8

*Fink v. Todd Shipyards,*
No. 04-430, 2004 U.S. Dist. LEXIS 6912 (E.D.La. April 20, 2004) ............ 8

*Freiberg v. Swinerton & Walberg Prop. Servs., Inc.,*
(D. Colo. 2002) 245 F. Supp. 2d 1144 ............ 7

*In re "Agent Orange" Product Liability Litigation; Isaacson v. Dow Chem. Co.,*
(E.D.N.Y. 2004) 304 F. Supp. 2d 442 ............ 5

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*] No. M21-88, MDL NO. 1358 (SAS)
2007 U.S. Dist. LEXIS 89584 (S.D.N.Y. December 3, 2007). ............ 5

*Jefferson County v. Acker,*
(1999) 527 U.S. 423 ............ 9

*Lewis v. Babcock Industries, Inc.,*
985 F.2d 83 (2nd Cir. 1993).) ............ 10, 13

*McGillick v. World Trade Center Properties, LLC,*
No. 04 Civ. 2747 (AKH)
2004 U.S. Dist. LEXIS 18361, at *5 (S.D.N.Y. September 13, 2004) ............ 6

*Mesa v. California,*
(1989) 489 U.S. 121, 140 ............ 6

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

*Mitchell v. AC&S*,
No. 04-2713 (E.D.Va., filed Dec. 15, 2004) .......... 8

*Pack v. AC and S, Inc.*,
(D. Md. 1993) 838 F. Supp. 1099 .......... 8

*Reiser v. Fitzmaurice*,
No. 94 Civ. 7512 (CSH), 1996 U.S. Dist. LEXIS 1368 .......... 5

*Ryan v. Dow Chemical Co.*,
(E.D.N.Y. 1992) 781 F. Supp. 934 .......... 7

*Tennessee v. Davis*,
(1980) 100 U.S. 257, 263 .......... 4

*Willingham v. Morgan*,
(1969) 395 U.S. 402 .......... 4, 6

*Winters v. Diamond Shamrock Chemical Co.*,
(5th Cir. 1998)149 F.3d 387 .......... 6

**Statutes**

28 U.S.C. §1442(a)(1) .......... 1, 4, 5, 6, 9, 15

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

## I. PRELIMINARY STATEMENT

As a manufacturer of boilers for the United States Navy, among other equipment, Foster Wheeler LLC ("Foster Wheeler") removed this matter based upon the federal officer removal statute. 28 U.S.C. §1442(a)(1). There are important federal interests, recognized by Congress and the United States Supreme Court, implicated by the claims asserted by plaintiffs in this action against Foster Wheeler. Jurisdiction in this Court would not deprive plaintiffs of any substantive rights and would not, in any legitimate way, deprive plaintiffs of their right to seek redress for the injuries they allege are associated with the decedent's asbestos exposure. Plaintiffs seek to impose state law standards on claims which the United States Supreme Court has stated, unequivocally, are pre-empted by federal law and should be determined by a federal court.

Plaintiffs seek to remand so that they may ask a jury to impose on Foster Wheeler a duty broader than that which the U.S. Supreme Court has found may be imposed on manufacturers of military equipment. Despite the accusations and innuendo contained in plaintiffs' Motion, plaintiffs seek to remand to frustrate the rationale underlying §1442(a)(1) and thwart the established federal interest protected by this statute and the cases which have defined its scope.

## II. STATEMENT OF RELEVANT FACTS

Plaintiffs Rodney C. Ball and Reginald K. Ball ("Plaintiffs") served Foster Wheeler with plaintiffs' Summons and Complaint on November 20, 2007. In the Complaint, plaintiffs solely allege that their decedent, Alfred Ball ("Ball" or "Decedent") was exposed to asbestos-containing products while working as a boiler technician in the United States Navy ("Navy") from 1955 to 1969. (*See* Plaintiffs' Complaint attached hereto as Exhibit 1.) Foster Wheeler is one of only four defendants sued in this case, and is the only boiler manufacturer-defendant identified in this matter. Accordingly, it appears that Plaintiffs are alleging that Decedent was exposed to a Foster Wheeler boiler while he served in the Navy.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

Based on this identification, Foster Wheeler filed a timely Notice of Removal on December 20, 2007. This Notice was filed within thirty days of Foster Wheeler's receipt of Plaintiffs' Summons and Complaint, which constituted the first paper from which the grounds for removal could be determined.

In manufacturing equipment for the Navy, Foster Wheeler acted under the direction of federal officers, is entitled to a federal defense arising out of its official duties, and can demonstrate the causal connection between that which Foster Wheeler did under federal direction and plaintiffs' alleged injuries.

Through various affidavits now advanced in opposition to remand, Foster Wheeler establishes, among many other facts concerning the direct and complete control exercised by the Navy over Foster Wheeler with respect to its boilers, the following facts:

1. Foster Wheeler manufactured and supplied boilers and related auxiliary equipment, including economizers for Navy ships under contracts between Foster Wheeler and the United States of America, Navy Department or contracts between Foster Wheeler and shipyards who contracted with the United States of America, Navy Department. (*See* Affidavit of J. Thomas Schroppe,[1] dated March 10, 2006, attached hereto as Exhibit 2 ("Schroppe Affidavit"), at ¶4 and ¶7.)

2. The Navy was responsible for all phases of the design of a vessel ("Ship Specs") as well as all specific components of the boilers and auxiliary equipment including economizers ("Mil Specs"). Naval officers supervised, enforced and approved Foster Wheeler's compliance with the plans and specifications for its boilers. (*Id.* at ¶5 and ¶7.)

3. A Navy officer supervised Foster Wheeler's production of boilers and economizers for Navy vessels and exercised direct control over all aspects of Foster Wheeler's production of this equipment for Navy vessels. As manufactured and shipped by Foster Wheeler to the Navy, Foster Wheeler's equipment did not have any asbestos-containing thermal insulation on them. (*Id.* at ¶15 and ¶16). Indeed, the Navy expressly delegated responsibility for the delivery and installation of thermal insulation and lagging on machinery to

[1] Schroppe holds a Marine Engineering degree and was a Third Assistant Engineer for American Export Lines. He was employed by Foster Wheeler for thirty-seven years and was, among other jobs, President of Foster Wheeler Boiler Corporation.

the shipbuilder. (*See* Affidavit of Lawrence Stilwell Betts, MD, PhD, CIH, FACOEM,[2] dated September 27, 2006 ("Betts Affidavit"), attached hereto as Exhibit 3 at ¶6.)

4. The Navy exercises complete control over what goes on its ships. Under the Navy's specifications, as well as under actual Navy practice as it evolved in the field, Foster Wheeler would not have been permitted to affix any type of warning or caution statement to a piece of equipment intended for installation onto a naval vessel, beyond those expressly specified by the Navy. (*See* Schroppe Affidavit at ¶21). Foster Wheeler would not have been permitted to affix any type of warning or caution statement to Foster Wheeler machinery to be used on a Navy vessel addressing the alleged hazards of insulation materials used on its equipment supplied to the Navy. (*Id.* at ¶22.)

5. The Navy had complete control over every aspect of each piece of equipment used on its ships. This control included what warnings should or should not be included. The Navy controlled the decision making with respect to instructions and warnings on every piece of equipment. (*See* Affidavit of Admiral Ben J. Lehman,[3] U.S. Navy, Ret., dated July 12, 2007 ("Lehman Affidavit"), attached hereto as Exhibit 4, at ¶10)

6. Navy personnel participated intimately in the preparation of the information that was included in the technical manuals which were produced at the direction of the Navy and delivered with Foster Wheeler equipment. These manuals included safety or hazard information only to the extent directed by the Navy. (*See* Lehman Affidavit at ¶11)

7. The Navy was intimately involved and had final approval of all technical and engineering drawings, operating manuals and safety or hazard information that accompanied a piece of equipment. The Navy determined the nature of hazards subject to any precautionary labeling and the content of any such labeling. The Navy dictated every aspect of the written documentation and warnings associated with its ships and did not permit deviation by any of its contractors. (*See* Lehman Affidavit at ¶11)

---

[2] Betts is a retired United States Navy Captain and qualified surface warfare medical department officer. He is board certified in Occupational Medicine and Industrial Hygiene.

[3] Lehman is a retired United States Navy Rear Admiral with naval architectural design and marine engineering expertise who served as, among other jobs, Ship Superintendent and Dry Docking Officer at the New York Naval Shipyard [formerly the Brooklyn Naval Shipyard], and Ship Superintendent at the San Francisco Naval Shipyard.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

8. The Navy, not Foster Wheeler, determined the nature of hazards to be subject to any precautionary labeling and the content of any specified labeling. It was the Navy, not Foster Wheeler, which determined the nature of any warnings to be affixed to any Foster Wheeler equipment placed on a Navy vessel. (*See* Schroppe Affidavit at ¶22)

9. The information possessed by the Navy with respect to the specification and use of asbestos insulation and health hazards associated with the use of asbestos insulation on Navy vessels far exceeded any information concerning the hazards of asbestos insulation used onboard a Navy vessel that could have been provided by Foster Wheeler to the Navy. (*See* Betts Affidavit at ¶31)

10. There was no information concerning any asbestos hazard or danger posed by any asbestos-containing product applied to any machinery on a Navy ship known by Foster Wheeler that was not known to the United States and the Navy. (*Id.*)

Of note, Admiral Lehman had begun his Naval career prior to Ball's alleged exposure to asbestos on Navy ships. These facts mandate that this Court exercise its jurisdiction over this action.

## III. ARGUMENT

### A. IN ORDER TO PROTECT THE UNIQUE FEDERAL ISSUE AT STAKE IN THESE CASES, PLAINTIFFS' REMAND APPLICATION MUST BE DENIED

The Supreme Court has long recognized that the operations of the federal government would be arrested if federal agents were held accountable in a State court for actions taken within the scope of their federal authority. (See *Tennessee v. Davis*, 100 U.S. 257, 263 (1880).) Congress enacted the removal provisions of §1442(a)(1) of Title 28 of the United States Code to ensure the existence of "a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." (*Arizona v. Manypenny*, (1981) 451 U.S. 232, 242.) The right to removal under this section is "*absolute* whenever a suit in a state court is [brought] for any act 'under color' of federal office." *Willingham v. Morgan*, (1969) 395 U.S. 402, 406 (emphasis added). Without §1442(a)(1),

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

state courts would have the power to undermine federal law and policy by punishing federal agents for acts committed in furtherance of their official duties. (See *Reiser v. Fitzmaurice*, No. 94 Civ. 7512 (CSH), 1996 U.S. Dist. LEXIS 1368, at *6-7 (S.D.N.Y. Feb. 8, 1996), *citing Willingham*, 395 U.S. at 406.)

Federal jurisdiction rests on the very basic federal interest in the enforcement of federal law. (*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*[4], No. M21-88, MDL NO. 1358 (SAS) 2004 U.S. Dist. LEXIS 22100, at *15 (S.D.N.Y. Nov. 4, 2004) [hereinafter "MTBE"], *quoting Willingham*, 395 U.S. at 406.) Section 1442(a)(1) is thus designed to prevent state courts from interfering with the implementation of federal law. (See *In re "Agent Orange" Product Liability Litigation; Isaacson v. Dow Chem. Co.*, (E.D.N.Y. 2004) 304 F. Supp. 2d 442, 446 [hereinafter "*Isaacson*"].) By providing federal officials with a qualified right of removal, §1442(a)(1) effectively safeguards the supremacy of federal law. (*Reiser*, 1996 U.S. Dist. LEXIS 1368, at *7.) This federal court interest in protecting the rights of federal officials has been extended to private entities "acting under" federal agents such that the liability of a contractor performing its obligation under a procurement contract is controlled by federal law. (See *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988); *Isaacson*, 304 F. Supp. 2d at 445.)

The most important function of removal is to allow a federal court to determine the validity of the asserted official immunity defense. (*Willingham*, 395 U.S. at 407.)

> The military contractor defense is based upon substantive policy considerations as well as pragmatic procedural factors in controlling litigation…Failure to apply the federal officer removal statute would allow into the back door of state litigation what the government contractor defense barred at the front door.
>
> * * * * *
>
> Because government contractor cases are freighted with factual findings, *Boyle*, while laying down a substantive rule, may be readily circumvented by state courts unsympathetic to the defendants.

(*Isaacson*, 304 F. Supp 2d at 451.)

---

4 *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation* [decided on other grounds] No. M21-88, MDL NO. 1358 (SAS) 2007 U.S. Dist. LEXIS 89584 (S.D.N.Y. December 3, 2007).

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

The test for removal is broader, not narrower, than the test for official immunity. (*Willingham*, 395 U.S. at 405. Congress enacted §1442(a)(1) to address its concern of local hostility to federal authority. (See *Mesa v. California*, 489 U.S. 121, 140 (1989).) A defendant need not win its case before it can be removed. (*Willingham*, 395 U.S. at 407.) The defendant need only articulate the colorable applicability of the federal defense to plaintiffs' claims to establish federal jurisdiction. (*Winters v. Diamond Shamrock Chemical Co.*, (5th Cir. 1998)149 F.3d 387, 400.)

Foster Wheeler has advanced, in support of its removal and in opposition to plaintiffs' remand application, compelling evidence demonstrating that this Court has jurisdiction over this matter. To protect the important federal interests at stake in this case, this Court should exercise that jurisdiction and deny Plaintiffs' application for remand.

### B. FOSTER WHEELER MEETS THE REQUIREMENTS OF §1442(A)(1) AND JURISDICTION IS PROPER IN THIS COUrt

In order to remove a case to federal court under §1442(a)(1), a defendant must establish (a) that it acted under the direction of a federal officer or agency, (b) that it has a colorable federal defense, and (c) that there is a causal nexus between the federal direction and the conduct at issue. (*MTBE*, 2004 U.S. Dist. LEXIS 22100, at *9; *see also, McGillick v. World Trade Center Properties, LLC*, No. 04 Civ. 2747 (AKH), 2004 U.S. Dist. LEXIS 18361, at *5 (S.D.N.Y. September 13, 2004).) Foster Wheeler has submitted evidence that the actions that form the basis of Plaintiffs' claims were performed under the direction of federal officers, that it has a colorable federal defense to the asserted claims and that there is a causal nexus between the federal direction and the actions which give rise to Plaintiffs' claims. The removal of this action to federal court was, therefore, proper by Foster Wheeler and Plaintiffs' motion for remand must be denied.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

### 1. *Foster Wheeler has Established that it "Acted Under" the Color of Federal Authority*

To demonstrate that a defendant was "acting under" the direction of a federal officer, the defendant must show that the acts forming the basis of the state suit were performed pursuant to an officer's "direct orders or comprehensive and detailed regulations." (*Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, (D. Colo. 2002) 245 F. Supp. 2d 1144, 1152, *citing Ryan v. Dow Chemical Co.*, (E.D.N.Y. 1992) 781 F. Supp. 934, 947.) This may be established by demonstrating strong government involvement in the acts that led to the claim and by establishing that defendant could be sued in state court based on the actions taken pursuant to federal direction. This requirement is satisfied when a government contractor builds a product pursuant to military specifications and is later sued because compliance with those specifications allegedly caused personal injuries. (*Isaacson*, 304 F. Supp. 2d at 448, *citing Akin v. Big Three Indus., Inc.*, (E.D. Tex. 1994) 819 851 F. Supp., *removal aff'd by Akin v. Ashland Chemical Co*, (10th Cir. 1998) 156 F.3d 1030.)

The evidence advanced by Foster Wheeler in support of its removal demonstrates that it was "acting under" the direction of a federal officer. The evidence establishes that:

1. Foster Wheeler manufactured and supplied boilers and economizers for Navy ships under contracts between Foster Wheeler and the United States of America, Navy Department or contracts between Foster Wheeler and shipyards who contracted with the United States of America, Navy Department. (*See* Schroppe Affidavit at ¶4.)

2. A Navy officer supervised Foster Wheeler's production of boilers and economizers for Navy vessels and exercised direct control over all aspects of Foster Wheeler's production of this equipment for Navy vessels. (*Id.* at ¶15 and ¶16.)

3. The Navy had complete control over every aspect of each piece of equipment used on its ships. This control included what warnings should or should not be included. The Navy controlled the decision making with respect to instructions and warnings on every piece of equipment. (*See* Lehman Affidavit at ¶10.)



BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

4. The Navy was intimately involved and had final approval of all technical and engineering drawings, operating manuals and safety or hazard information that accompanied a piece of equipment. (*See* Lehman Affidavit at ¶11.)

5. Because of the nature of its mission, the Navy exercises 100% ironclad control over what goes on its ships. In this regard, the Navy had precise specifications as to the nature of any information that was to be affixed to equipment supplied to the Navy by Foster Wheeler. Under the Navy's specifications and procedures, as well as under actual Navy practice as it evolved in the field, Foster Wheeler would not have been permitted to affix any type of warning or caution statement to a piece of equipment intended for installation onto a naval vessel, beyond those expressly specified by the Navy. (*See* Schroppe Affidavit at ¶22.)

This evidence, which demonstrates the active and direct control by the Navy over Foster Wheeler with respect to every aspect of the design, manufacture and delivery of its boilers, including the Navy's absolute control over any warnings permitted to be placed on a Foster Wheeler boiler or delivered with it, has been found by a number of federal courts to demonstrate that Foster Wheeler, and companies like Foster Wheeler, were acting under the direction of a federal officer. (See *Fink v. Todd Shipyards*, No. 04-430, 2004 U.S. Dist. LEXIS 6912 (E.D.La. April 20, 2004); *Delancey v. General Electric*, No. 04-431 (E.D.La., filed Mar. 31, 2004); *Chicano v. General Electric Co.*, No. 03-5126 (E.D.Pa., filed Apr. 6, 2004); *Mitchell v. AC&S*, No. 04-2713 (E.D.Va., filed Dec. 15, 2004). *See also Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3rd Cir. 1998) [the Court of Appeals acknowleded that the District Court had found that Westinghouse had been "acting under the direction, control and supervision of an officer of the United States"]; *Crocker v. Borden, Inc.*, (E.D. La. 1994) 852 F. Supp. 1322, 1327 [the Court ruled that the affidavits submitted by Westinghouse clearly established that it was "acting under the direction of the Navy in the construction of the marine turbines"]; *Pack v. AC and S, Inc.*, (D. Md. 1993) 838 F. Supp. 1099, 1103 [the government's control over the design and testing of Westinghouse's turbine and involvement in the revision of specifications



BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

satisfied the "acting under" requirement of §1442(a)(1).)].) Foster Wheeler has met its burden with respect to the "acting under" requirement for removal and federal jurisdiction.

2. *Foster Wheeler Has Asserted a Colorable Federal Defense*

A defendant must assert a colorable federal defense in order to remove an action to federal court. Courts have found that this requirement should be interpreted broadly and does not require a showing that the defense asserted is likely to succeed. (*McGillick*, 2004 U.S. Dist. LEXIS 18361, at *9; *see also Jefferson County v. Acker*, (1999) 527 U.S. 423, 431.) A defendant does not need to prove the asserted defense, but only articulate the colorable application of a federal defense to plaintiff's claims in order to satisfy this requirement. (See *Winters*, 149 F.3d at 400, *citing Willingham*, 395 U.S. at 407.) Since the purpose of the defense is to supply subject matter jurisdiction to the court, any federal defense will suffice. (*MTBE*, 2004 U.S. Dist. LEXIS 22100, at *11.)

For purposes of §1442(a)(1), a federal defense is one based on a contention that defendant was acting under federal direction at the time of the conduct of which plaintiff complains. (*MTBE*, 2004 U.S. Dist. LEXIS 22100, at *11.) In response to Plaintiffs' claims herein, Foster Wheeler asserts that it is shielded from liability by the government contractor defense. This defense shields government contractors from liability in state court for defects in equipment supplied to the United States when (1) the United States approved reasonably precise specifications, (2) the equipment conformed with these specifications, and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. (*Boyle*, 487 U.S. at 512.)

The uncontroverted evidence from Admiral Lehman and Schroppe demonstrates that the Navy provided Foster Wheeler with precise and detailed specifications that governed every aspect of the design, manufacture and delivery of the boilers at issue in these actions including any warnings or written information that could accompany the Foster Wheeler boilers. As previously noted, federal courts evaluating this type of

evidence have found it to satisfy the first prong of the *Boyle* test. (See *Winters*, 149 F.3d at 400; *Isaacson*, 304 F. Supp. 2d at 450-451; *Crocker*, 852 F. Supp. at 1327; *Pack*, 838 F. Supp. at 1099.)

Conformity with the specifications, the second prong of the *Boyle* test, may be established by the acceptance and use of the item by the Navy. (See *Lewis v. Babcock Industries, Inc.*, (2nd Cir. 1993) 985 F.2d 83, 86.) Each boiler manufactured by Foster Wheeler for the Navy went through an acceptance trial and was only accepted by the Navy after any deficiencies were corrected by Foster Wheeler. (Schroppe Affidavit at ¶20.) Accordingly, the evidence advanced by Foster Wheeler satisfies the second prong of *Boyle.*

In order to satisfy the third prong of the *Boyle* test, Foster Wheeler needs to advance evidence demonstrating that it warned the United States about the dangers in the use of the equipment that were known to it but not the United States. (*Boyle,* 487 U.S. at 512.) Of course, in this action, Plaintiffs do not allege that the Foster Wheeler boilers, as manufactured and delivered by Foster Wheeler to the United States Navy, posed any dangers to Ball, certainly not the danger they assert led to his injuries. Instead, they allege that Foster Wheeler should have warned Decedent about the hazards of asbestos-containing products, *manufactured by other companies and applied by others to its equipment after its acceptance by the Navy,* and that this alleged failure to warn provides a basis for Plaintiffs' claims against Foster Wheeler.

First and foremost, the state law duty that Plaintiffs seek to impose in this action is different and fundamentally inconsistent with the scope of the duty owed by manufacturers of military equipment as recognized by the Supreme Court. The Supreme Court has stated that the duty to warn by military equipment manufacturers is satisfied if "the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." (*Boyle,* 487 U.S. at 512.) Any claim under this asserted state law duty, which is fundamentally contrary to the duty defined by the *Boyle* Court, is pre-empted. (See *Boyle,* 487 U.S. at 508-509.)

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

> Another area that we have found to be of peculiarly federal concern, warranting the displacement of state law, is the civil liability of federal officials for actions taken in the course of the duty. We have held in many contexts that the scope of that liability is controlled by federal law. (Citations omitted.) The present case involves an independent contractor performing its obligation under a procurement contract, rather than an official performing his duty as a federal employee, but there is obviously implicated the same interest in getting the work done.
>
> We think the reasons for considering these closely related areas to be of "uniquely federal" interest apply as well to the civil liabilities arising out of the performance of federal procurement contracts.

(*Id.* at 505-06.) Accordingly, Plaintiffs' failure to warn claim, to the extent it goes beyond the duty to warn identified by the *Boyle* Court, fails as a matter of law and cannot be the basis for remand.

Assuming, *arguendo*, this Court finds, despite the narrowly crafted duty imposed by the *Boyle* Court, that Foster Wheeler's duty extended to warning the United States about any dangers associated with the use of asbestos-containing insulation applied to its boilers by others, Foster Wheeler has advanced evidence that there were no dangers about the use of asbestos-containing insulation on boilers that were known to it but not the United States. (See generally, Betts Affidavit, Exhibit 3.)[5] After a fairly exhaustive review of the knowledge of the United States and United States Navy concerning the hazards of the use of asbestos-containing insulation products on Navy ships and in Navy and contract shipyards, Betts concludes:

> 1) The information possessed by the Navy with respect to the specification and use of asbestos, and the health hazards associated with its use aboard Navy vessels, represented the state-of-the-art and far exceeded any information that possibly could have been provided by a boilers manufacturer like Foster Wheeler. Based upon the knowledge at a given period in time, the Navy was fully aware of the recognized health hazards of asbestos and had a robust program to control exposure of personnel and monitor their health.
>
> 2) There was no information concerning any asbestos-containing hazard or danger posed by any asbestos-containing product applied to any marine boiler on a United States Navy ship known to a boiler manufacturer, like Foster Wheeler, that was not known to the United States and the United States Navy.

---

[5] Foster Wheeler has also advanced compelling evidence that the Navy dictated what warnings could be provided by Foster Wheeler and dictated the content of any warning Foster Wheeler was permitted to provide.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

*Id.* at ¶32.

Apparently, in an attempt to avoid the well-established law demonstrating that removal is appropriate in this case, Plaintiffs allege that Foster Wheeler manufactured boilers "in a generic manner," and sold to the Navy the same boilers that it sold to the general public. Foster Wheeler undoubtedly manufactured boilers for industrial and commercial consumption, and did not construct boilers *exclusively* for the Navy. However, Admiral Lehman, who also served as a Ship Superintendent at various shipyards, and Schroppe, who had personal experience and intricate involvement with domestic and overseas military specifications in relation to the Navy's contracts with Foster Wheeler, have established that boilers manufactured by Foster Wheeler especially for the Navy were, indeed, unique to naval vessels, and thus plaintiffs' assertion is incorrect. Schroppe's affidavit clearly states:

> Foster Wheeler furnished and fabricated marine propulsion boilers and related auxiliary systems for the U.S. Navy, Maritime Commission and Coast Guard ships under contract between Foster Wheeler and the shipyards and/or the United States Navy Department and its authorized agencies, officers and personnel.

(Schroppe Affidavit, at ¶4.)

Admiral Lehman further confirms that Foster Wheeler especially designed and built boilers for the propulsion of Navy combat vessels, which were designed and manufactured in accordance with detailed specifications written, approved and issued by the Navy. (See Lehman Affidavit, at ¶3.) Plaintiffs incorrectly assume that since Foster Wheeler manufactured the boilers, it was at liberty to place warnings on the boilers that it manufactured for the Navy without the Navy's authorization.

The submitted affidavits are not general statements, but are accurate attestations by experienced naval officers and Foster Wheeler personnel concerning the Navy's strict scrutiny over all equipment manufactured by Foster Wheeler for the Navy, including warnings affixed on these products. As referenced in these affidavits, attached are the subject military specifications which demonstrate that military contractors, including Foster Wheeler, were required to adhere to the Navy's very specific directions concerning

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

every aspect and each detail of products it accepted from any of its contractors. (See Mil Specs entitled "Manuals, Technical: Equipments and Systems," attached hereto as Exhibit 5; see also Mil Specs labeled "Boilers, Steam, High Pressure: Naval Ship Propulsion," attached hereto as Exhibit 6, which dictate each detail ranging from the general design of the boiler, to the manner in which illustration of essential parts of the boiler should be presented[6].)

As previously indicated, plaintiffs have not identified a specific ship aboard which they allege the decedent was exposed to Foster Wheeler boilers. Upon identification of the ship(s) on which the decedent worked, assuming it contained a Foster Wheeler boiler, Foster Wheeler will provide the contract documents as they relate to the particular vessel(s), which will further demonstrate the overwhelming control the Navy exerted over every boiler manufactured by Foster Wheeler for use on its ships.

Accordingly, should this Court decide to expand the duty imposed by the *Boyle* Court in evaluating its jurisdiction in these cases, which it should not, Foster Wheeler has demonstrated that it satisfied any duty to warn owed the United States.[7]

3. *Foster Wheeler Has Demonstrated a Causal Nexus Between the Federal Direction and the Conduct At Issue*

Though Plaintiffs try to color their arguments in support of remand in various ways, the primary thrust of their argument is that there is no evidence that the Navy dictated the content of the warnings that could accompany products such as boilers. Two flaws permeate Plaintiffs' argument. First, Plaintiffs rely on a state law duty, pre-empted by federal law, to craft the failure to warn claim that they seek to assert. Second, the evidence advanced demonstrates exactly what Plaintiffs assert needs to be demonstrated. Foster Wheeler has advanced the very evidence which every court which has looked at this issue has indicated needs to be advanced to establish federal jurisdiction.

---

[6] *See* MIL-B-18381B, Sec 3.20 entitled *Drawings*.

[7] The Second Circuit has established that there is no requirement that the defendant inform the government of dangers already known to the government. (See *Lewis v. Babcock Industries, Inc.*, 985 F.2d 83, 89 (2nd Cir. 1993).)

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

Plaintiffs appear to limit their claim against Foster Wheeler, as it relates to its equipment on Navy vessels, to a failure to warn claim. This claim as advanced by Plaintiffs, as has been discussed, is pre-empted by federal law. The extent of the warning duty owed by Foster Wheeler has been defined by the United States Supreme Court. Evidence demonstrating that Foster Wheeler met that duty has been advanced in support of Foster Wheeler's opposition to remand. The warning prong of the *Boyle* test has been satisfied.

Accordingly, Foster Wheeler has articulated, if not proven, the colorable applicability of the federal contractor defense to Plaintiffs' claim and has established federal jurisdiction as required by the Supreme Court. To protect the significant unique federal interests which Plaintiffs hope to thwart through trial in state court, the Court must exercise its jurisdiction over these actions.

The evidence, at a minimum, raises a colorable federal defense and demonstrates the causal connection between that which Foster Wheeler did under federal direction and Plaintiffs' failure to warn claim. Nothing more is needed to establish federal jurisdiction. Whether the facts establish the conditions for the defense may be a question for a trier-of-fact. It is not a question to be resolved when this Court is determining its jurisdiction. (*Boyle*, 487 U.S. at 514.) Foster Wheeler does not have to win its case before it can have it removed. (*Acker*, 527 U.S. at 431.) Where a defendant seeks removal pursuant to the federal officer removal statute, "no determination of fact is required but it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith." (*MTBE*, 2004 U.S. Dist. LEXIS 22100, at *10, *quoting Colorado v. Syms*, 286 U.S. 510, 519 (1983).) The evidence advanced by Foster Wheeler in support of its opposition to Plaintiffs' motion for remand meets this standard.

The Supreme Court has identified a unique federal interest in the context of government procurement. (*Boyle*, 487 U.S. at 507.) The Supreme Court found that the imposition of liability on government contractors would directly affect the terms of government contracts as "the contractor will either decline to manufacture the design

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

specified by the Government, or it will raise the price," causing an economic detriment to the United States. (*Boyle*, 487 U.S. at 507.) Justice Scalia reiterated the policy interests supporting this holding when he stated that "[i]t makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production." (*Id*. at 512.) In order to protect this unique federal interest this Court should exercise its jurisdiction over this action and deny plaintiffs' remand application.

## IV. CONCLUSION

For all of the reasons set forth herein, it is respectfully requested that plaintiffs' Motion to Remand be denied, given the unequivocal evidence that with respect to Plaintiffs' claims against Foster Wheeler, Foster Wheeler was acting under the direct control and oversight of a federal agency pursuant to 28 U.S.C. 1442(a)(1), that it has a colorable defense to Plaintiffs' claims, and that a causal nexus exists between the federal direction exercised over Foster Wheeler and the actions which give rise to Plaintiffs' claims.

Dated: February 4, 2008

BRYDON, HUGO & PARKER

By: ______________________
Thomas J. Moses
Attorney for Defendant
FOSTER WHEELER ENERGY CORPORATION

<u>*Ball, Rodney (WD Alfred)*</u>
Southern District of California Case No. 07-CV-2392-W-POR
**LexisNexis Transaction No.**

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of 18 years, and not a party to the within action. My electronic notification address is service@bhplaw.com and my business address is 135 Main Street, 20th Floor, San Francisco, California 94105. On the date below, I served the following:

DEFENDANT FOSTER WHEELER ENERGY CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND (**ONE OF FIFTEEN**)

on the following:

Casey, Gerry Schenk, Francavilla, Blatt
& Penfield, LLP
110 Laurel Street
San Diego, CA 92101
Fax: (619) 544-9232

o By transmitting via facsimile the document(s) listed above to the fax number(s) set forth above on this date before 5:00 p.m.

o By placing the document(s) listed above in a sealed envelope and placing the envelope for collection and mailing on the date below following the firm's ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on the same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

o By placing the document(s) listed above in a sealed envelope designated for Federal Express overnight delivery and depositing same with fees thereupon prepaid, in a facility regularly maintained by Federal Express, addressed as set forth above.

**X** by causing personal delivery of the documents(s) listed above to the person(s) at the address(es) set forth above. (**Plaintiff Only**)

I declare under penalty of perjury that the above is true and correct. Executed on February 4, 2008, at San Francisco, California.

Wanda D. Claudio
Wanda D. Claudio